The next case today is United States v. Jean C. Torres or Jean C. Torres-Melendez, appeal number 20-1029. Attorney Byrd-Lopez, please introduce yourself for the record and proceed with your argument. Good morning, may it please the court. Alejandra Byrd-Lopez on behalf of Giancarlo Torres-Melendez. I'd like to reserve two minutes for rebuttal if I may. You may. Thank you. Mr. Torres received an upwardly variant sentence of 60 months, which is a sentence 30 to 36 months above the calculated guideline range. In imposing this extreme variance, the sentencing court's observations and comments made it clear that it had imposed the variance in consideration of factors that were used in a manner that this court has found to be improper. Among others, the court emphasized the nature of fully automatic weapons, which is a consideration which, according to the recent precedence of this course, is cooked into the guideline and is a universal application in 922-0 offenses. These on-point cases, Rivera de Rios, Garcia Perez, and Carrasquillo Sanchez control in this case since there are really no distinguishing facts which would take this case out of the heartland of a typical 922-0 offense. A variance here, and certainly the extent of the upward variance here, was therefore inappropriate. This error alone requires reversal in this case, but the court may tell me... So, Kelsey, you don't disagree that Kimbrough says that a district court judge can have a valid policy disagreement? You concede that? Pardon me? I don't disagree. And so, is this a matter of inadequate explanation? I mean, for instance, suppose the court wrote a lengthy and detailed script as to the actual crime rate in Puerto Rico, the frequency of machine guns as opposed to other kinds of violence, and just explicitly set out the basic reasons for the policy disagreement. Would that be enough? Well, the problem is I think here the government is conflating, and I think that there's also some confusion in general, but I think that there has to be a distinction between community-based considerations, and when those factors are taken into consideration, and a categorical policy disagreement. A categorical policy disagreement basically says this guideline gets it wrong for every defendant who commits this particular crime, as it did in Kimbrough, or there was a finding that every defendant who got convicted of a crack cocaine offense was really in a disparate situation according to the guideline from a powder cocaine offense, and that the court articulated a specific categorical disagreement with the way the guideline applies in every case for that crime. Do you mean in every case in the country? Yes. So, the Second Circuit disagrees with you on that? I'm not sure that it does. If the Caveira case is looked at very carefully, it actually acknowledges that it's rendering a Kimbrough-type disagreement. Because it's talking about metropolitan areas throughout the whole country? Well, what it says is it references that, I'm sorry, I'm looking at the wrong case, but the text of the case acknowledges that it's a locality-based, it's making a locality-based determination, and it says whether or not the district court's decision in this case reflected a categorical policy disagreement with the guidelines. So, that case does not rely on a specific categorical policy disagreement with the guidelines, and I don't think that locality-based consideration can be considered categorical because it doesn't apply to every defendant in every case convicted of that particular crime. And I think that that's really important because the thing is that a community-based characteristic consideration focuses on a particular community at a particular point in time and tries to contextualize the particular defendant's conduct within that context. So, it's a moving target, really. And so, a community-based characteristic, which is appropriate to take into consideration in one case, may not be appropriate to take into consideration in another case. So, yes. Let me ask you a hypothetical that captures what I'm trying to figure out in this tricky case. The Sentencing Commission, in setting the range for the typical machine gun possession offense, presumably forms some judgment about the seriousness of the crime and the need for deterrence, and it does that by looking across the country and data from across the country, and it forms a view that this many months is properly gauged to that need for deterrence. Assume in a jurisdiction like Puerto Rico, the data is different. There's a perception that there's more need for deterrence. So, they therefore decide to punish crimes that occur in that community more harshly. Why isn't that a type of policy decision that could be made under the Sentencing Commission? I disagree that the Commission got it wrong for the country as a whole, but when you factor in the locale, there's a perception that that policy judgment doesn't fit. Well, that might be the logic for the case-specific consideration in that case. But you see, it would apply to every case in which there's a machine gun. Well, I disagree with that premise, because this court in Rivera-Berridos acknowledged that the possession of a machine gun is a non-violent, victimless crime, as opposed to a kind of shooting instance that the court in Mr. Torres's case referenced when it was imposing the sentence. So, you cannot put on equal footing those two crimes, because they are different. And this court has allowed district courts to take into consideration community characteristics, such as the high incidence of violent crime, when there's a link between the defendant or the offense that they committed and those violent crimes. And that's appropriate in this case, because it is directed towards an individualized assessment. But it's not a policy disagreement with the Sentencing Commission, because that same district court would assume, or would presumably, if it were a defendant in another district, would not bring to bear those community characteristics. So, it's not a disagreement with the guideline, per se. It's a disagreement with the resulting range in that case, for this particular defendant in this particular context. So, if a judge legitimately and rationally thinks that the need to deter felons from walking around with machine guns is a bigger problem in Puerto Rico than it is nationally, categorically, what do you say they can do about it, other than just stay within the range of the guidelines? Well, I haven't said that. I mean, under Flores-Machicope, the court can take into consideration community characteristics. I just think that it's important to make the distinction between a community characteristics justification for a variance and a categorical policy disagreement with the variance. But then, how would they take those is a felon possessing a machine gun, and the perception is that there's a greater need to deter that conduct in Puerto Rico than there is elsewhere. So, how does one take that into consideration to vary upward without you saying, oh, that's categorical? Well, I mean, I think that in the community, in the locale-based scenario, the court would have to, if there's a perception that there are more crimes or the crimes are more dangerous, then the court would have to actually justify that and give empirical data or statistics or something to substantiate that, and then it would explain how that refers to the 355A factors in this particular case. I mean, there would have to be some kind of a link to the defendant. It more violent here, so I'm just going to up all of the sentences in any crime that involves a firearm. It has to link it to the individual defendant. I would like to, if I can just add a very quick point. I mean, I think that the Kimbrough argument here that the government is bringing, it's bringing because Rivera Berrios and Garcia Perez in those cases have already precluded some of the flexibility that the courts may have felt that they had before, and it's really brought for the first time on appeal. The court below did not justify this sentence on the basis of Kimbrough or a policy disagreement with the actual guideline. It based it on community characteristics in a way that this court rejected. Am I right that the district court here also purported to rely on individual characteristics, but you just challenged whether the basis for that individualized, is this the violent tendencies, and you object to whether that's a permissible ground too, but I take it you suggest that the reference to the individual characteristics further supports the notion that it was not relying on Kimbrough here. Well, the court can have different justifications for a variance. Yeah, I understand. I'm just saying that when you look at the whole analysis that the district court engaged in, the fact that it also delved so much into the supposed violent tendencies of the defendant supports the idea that it thought it was doing the kind of case-linked use of local circumstances that suggests it was not engaged in a Kimbrough analysis, and then you're saying, but those case-linked circumstances are not itself permissible ones, so the enterprise fails. Is that the idea? Well, I think that, I mean, I want to address the question the court is asking. I think that it can't be an all or nothing. It's either Kimbrough or individual characteristics. I think that the court took into account a series of different considerations. I don't think it articulated any kind of Kimbrough policy disagreement. It did articulate the community characteristics factor, and it mentioned some individual characteristics, and individually those characteristics of the defendant and the offense wouldn't be sufficient to support the extent of the upward variance here or even an upward variance at all, and I would just refer to our briefs on the discussion of those individual issues. Thank you, Counselor. Thank you. Attorney Byrd-Lopez, at this time, if you could please mute your audio and video. Attorney Bornstein, please unmute and introduce yourself to begin. Good morning. Judge Thompson, and may it please the court, David Bornstein on behalf of the United States. Good morning. This court should affirm Mr. Tors' upwardly variant sentence. The District Court imposed it for two reasons, both of which are reasonable. First, the District Court's categorical disagreement with how leniently the Sentencing Commission treats the offense of machine gun possession, especially in light of Puerto Rico's unique problems with gun violence, and second, the District Court's determination that Mr. Tors had several case-specific factors warranting a more stringent sentence, but before I address those reasons, I'd like to quickly address the District Court's challenge statement that Mr. Tors... Before you move on, you just referenced Puerto Rico's prevalence for gun violence, the perception. Should we minimally ask the District Court to demonstrate through empirical data that that's a legitimate perception? I mean, the problem I have with what happens at times in Puerto Rico is that violence with a machine gun makes a lasting impression, an outsized impression, and so I can understand when there are incidents, and clearly we've been here long enough to know that, there are incidents that make outside impressions, and in fact, the District Courts routinely refer back to some of them, but is it accurate to say that the perception meets the reality when we that really lays out what it's basing its perception on? Yes, Your Honor, and I'd point to several things. First of all, this Court has repeatedly said that Puerto Rico has a quote-unquote unique problem with gun violence. Second, the District Court, in her sentencing colloquy, referenced Puerto Rico's murder rate, and indeed, if you look at the FBI 2019 Crime in the United The San Juan metropolitan area is the second deadliest metropolitan statistical area in the United States, and indeed, if you look at the top 25 most deadly, and these are the murder rates, metropolitan statistical areas in the United States, six of those 25 are in Puerto Rico, far more than any other state. So does that break the murder rate down into gun violence versus some other kind of weaponry use? No, Your Honor, it does not. It's simply the murder rate. However, the District Court also referred to eight machine gun-related mass shootings that had occurred in Puerto Rico within the last calendar year, and Mr. Torres does not deny that, and indeed, if you look at page 40 of his brief, he actually embraces that fact. Mr. Torres, on page 40 of his opening brief, agrees with the District Court that these mass shootings have left the people of Puerto Rico, quote-unquote, without ease or peace, and he goes on to say that these shootings are, and these are Mr. Torres's own quotes, that they are deadly, vicious, and unpredictable in nature. Suppose the District Court here said, look, I read the news, there's mass shootings going on all over the country, therefore, every offense involving a semi-automatic weapon, I'm doubling. Could they do that? I believe that a District Court, hypothetically, in general, could believe that the Sentencing Commission's guidelines do not sufficiently... No, no, but they just did it by saying, I read the news, and I keep reading about these mass shootings, I'm therefore doubling every offense involving a semi-automatic weapon. Oh, Your Honor, whether or not a doubling of the sentence would be appropriate, that's a question, but whether a court could make that sort of categorical disagreement, yes, and the reason why, Your Honor, this follows from the court's ruling in United States v. Palatano in 2008. There, Judge O'Toole imposed an upwardly variant sentence on a defendant who had been convicted of firearms trafficking, and Judge O'Toole said that, as any reader of the daily newspaper knows, there's a lot of gun violence on the streets in this district, and he felt that, as a result, firearms trafficking was a more serious offense than reflected in the guidelines, and that's why he upwardly varied in this court, and all he recited to was, reading the daily newspaper, this court blessed that upward variance in United States v. Palatano. So, we believe that the fact of the variance... In Palatano, there is that sentence about it being related to the individual offense characteristics. Was there anything identified there about the arguably other than mine, Ron? Well, actually, Your Honor, the defendant in Palatano objected to the upward variant sentence, saying that it was based on generalized reports of crime instead of his individual conduct, and this court said that he misses the point, that, in light of Kimbrough, a district court had the ability to categorically disagree with the guidelines, and, indeed, if I may just quickly read, this court said, post-Booker, it's now apparent that the district court has the committed the offense, including the particular community in which the offense arose, and considering the characteristics of that community, the district court has the authority to conclude that the impact of this particular offense is more serious than that reflected by the sentencing commission, and the court concluded, in this case, the district court expressly considered the ways in which Mr. Palatano's firearms offense was more serious and harmful within his specific community, and that was the basis on which this court upheld that And how would you reconcile Palatano and Rivera-Barrios? We would do so, Your Honor, because it's clear from the briefing in Rivera-Barrios, and also in this court's opinion, that Kimbrough was simply not raised. It's simply not an issue that was considered by this court, and this court, in several opinions in the past, has said that when you look to see whether a precedent is binding on the court, you must ask yourself, was an issue considered by that prior panel? If the issue was not considered by the prior panel... Does that mean every time there is a reference, no matter how undeveloped, to community characteristics, independent of a linkage to some element of the conduct that makes it a non-mine run case? We should treat that as an invocation of policy disagreement under Kimbrough. It really depends on what the district court says, Your Honor. Here, it is clear that there was a Kimbrough-based variance. The court specifically said that she found that the guidelines did not fully reflect the seriousness of the offense. And to answer your question more directly, Judge Barron, if you look at Spears versus the United States, the U.S. Supreme Court said in that per curiam decision that there is a categorical variance from the guidelines by necessity whenever a district judge finds that the guidelines in a mine run case does not adequately reflect the 3553A factor. And so that was the case where the Eighth Circuit said that in order to have a categorical variance, the court needs to explain why this case is different from other cases, and the Supreme Court reversed that, saying no. The mere fact that the Supreme Court found that the guidelines were insufficient to meet the 3553A factors, that showed that it was a categorical-based variance. And that follows from Rita, Your Honor. That was actually something that Rita said, followed from the advisory nature of the guidelines. Here, there really is no disagreement, at least in Mr. Torse's opening brief. He agrees there's a policy-based disagreement in his statement of the issues, in his summary of the argument on pages 53 and 59 of his argument section. So to keep something from being just totally arbitrary, I mean, does the district court judge have to articulate a policy disagreement with the guideline range and say these cases should automatically have six months, a year, 18, whatever, added to the guideline consideration? No, Your Honor. The district court does not actually have to formulate its own policy, and that's evident from Kimbrough itself, where the Supreme Court noted that the district court in Kimbrough, in disagreeing with the 100 to 1 crack cocaine to powder cocaine ratio, did not produce a ratio of its own. It simply found that that ratio did not result in a sentence that met the 3553A considerations, and the Supreme Court upheld that sentence, noting again that the district court did not create its own policy. I think calling it a policy-based disagreement is a little misleading. I think it's much more accurate just to remember the line from Rita, that now that the guidelines are advisory, the district court may conclude, even in a mine run case, that the court apportioned the goal. How do we police arbitrariness? Hang on. I understand that when the court is assessing an individual defendant, I mean, they're looking at many different factors, but such as here, which defense counsel says some of these things should not have been considered at all, but aside from the individual factors outside of the policy disagreement, how do we do that? So this court, under abuse of discretion review, still must determine whether or not the court has adequately justified its sentence. I want to note here, your honor, that when it comes to Mr. Torres' claim of adequate justification, that's a claim of procedural error. He did not raise that objection below. He's therefore forfeited it, and he does not argue plain error on review. So that is waived. But in general, this court can still review the district court's to see if they have adequately justified the sentence. Here, we believe the district court did so. It referenced those eight machine gun related mass shootings, which again, Mr. Torres agrees that it has left the people without ease or peace. And I would contrast that, your honor. And so here, the factual basis for the district court's disagreement is agreed by Mr. Torres. On page 40, he agrees with the mass shootings have left the people without a possess machine guns, or often possess machine guns like the one he possessed. So he agrees that there's a problem with proliferation here. There's very little factual disagreement. I just have one last question, which is, Rivera-Perez came down. We've then issued two opinions in its wake, remanding because of our uncertainty that sentences that look, I think, candidly, somewhat like this one that were handed down before Rivera-Perez might not have understood what Rivera-Perez was saying. And in that circumstance, why wouldn't it be prudent since this is also a pre Rivera-Perez sentence to do the same thing? And if the district court means to be making the kind of policy disagreement that you contend it's and is fully aware of the kind of review that might trigger under Kimbrough, it can then go ahead and justify the sentence on that ground. If on reflection, it determines that's not what it intended to do. And Rivera-Perez indicates to it that it aired, then it doesn't have to do that. But what's the reason for us to just be guessing about it? We know this was decided before Rivera-Perez. Why not just do what we've done the last two cases? Well, Rivera-Perez, again, did not consider Kimbrough. No one argued that that was a Kimbrough-based variance. So it's difficult to say that this court concluded that Rivera-Perez did not involve Kimbrough-based or just a categorical disagreement. But the two cases post that each have remanded post Rivera-Perez when we could have done the same thing in those cases you're urging us to do here, which is treated as a Did this court actually consider Kimbrough? And it reserved the issue. That was Carrasquillo-Sanchez. And it found that there was not a Kimbrough-based variance in that case. But there clearly was one here when the district judge said that the sentencing guidelines did not reflect the 3553A considerations. And I'd also simply note for your honors, there were several case-specific reasons for this upward variance from the defendant's flight, his violent tendencies. And I actually think most tellingly that when the plainclothes police officers approached him in order to get his cooperation to help them find a car, he had a machine gun in his waistband. And when these individuals approached, his first instinct was to grab for that handgun in his waistband. And when they identified themselves as police officers, he took off running with the gun in his hand. And so those were additional case-specific reasons for the district court's upward variance. But there was also the Kimbrough-based one. If your honors have no further questions, we would ask the court to affirm the district judge's sentence. It's clear that she had a categorical disagreement with the guidelines. We believe that because Mr. Torres himself agrees with the factual basis, there's the murder rate, there's the machine gun-related shootings, that there's simply no grounds under abuse of discretion review for reversing his sentence. Thank you. That concludes our... Oh, I'm sorry. Oh, another two minutes, yeah. Yes, I'm sorry, Judge. Attorney Baird-Lopez, you have two minutes of rebuttal. Please reintroduce yourself to begin. Yes, Alejandra Baird-Lopez for Giancarlo Torres Melendez. I have several points. I will try to make them as briefly as possible. First of all, Rivera-Berrios, although it was decided before the sentencing in this case was just... I'm sorry, let me rephrase. Although Rivera-Berrios was decided after the sentencing hearing in this case, it did not break new ground and it was based on well-established precedents of this court that say that since Flores Machicote, any kind of community considerations have to be based on some kind of connection with the defense or the offense and on individualized characteristics. So there should be no reason to remand. I understand that it made it clear that this machine gun sentencing justification that has been used repeatedly before is now clearly under Rivera-Berrios and Garcia-Perez and Carrasquillo Sanchez. It's now very clear that it can't be done. It's not that these cases are based on a new or novel legal... Could you just address why the flight and putting their hand on the gun and that gun doesn't constitute a case-specific consideration that in light of the concern about gun violence in Puerto Rico would satisfy even Rivera-Berrios? Definitely. So the court never relied on the fact that he put his hand on the gun and there's no reason to believe that he put his hand on the gun to use the gun or rather maybe to secure it. There's nothing... The court never mentioned that as a factor that it took into consideration. It did mention his flight, but we would only know that police approached a group and he knew he had a gun, so his first instinct was to flee so that he wouldn't get in trouble. And that is not so out of the ordinary or unusual in cases where police show up and people just go away as fast as they can in flight so that they don't get in trouble because they know they have a gun. That doesn't really take us outside of the guideline range. It's not outside the heartland. It happens frequently. And just to give a little bit of context, there is a guideline that adjudicates two additional points when there's a high-speed chase or some other kind of reckless endangerment during flight. And there was no allegation here that there was any kind of reckless endangerment and the variance in this case would be the equivalent more or less of seven additional points in the basic of the variance in this case. I would just like to ask that I disclaim any agreement with all of the things that the government stated. I mean, the briefs speak for themselves. I do not agree with the fact that it's well-established that the proliferation of machine guns is a particular problem in Puerto Rico or that firearm violence here, which is always very anywhere else in the United States. And we have some examples of some very spectacular and well-known firearm violence cases all throughout the United States. The court didn't cite any statistics on which to base its sentencing rationale. And I'd just like to remind the court that the government asked for a guideline sentence in this case. It did not ask for an upward variance. I'm happy to answer any other questions or address any other concerns that the court may have. And otherwise, I would just rest on the briefs. Thank you, counselor. The court would just note that counsel in both the first and the second case have been very helpful in helping us think through the problems. Thank you. Have a good day. You too. That concludes arguments in this case. Attorney Byrd, Lopez, and Attorney Bornstein, you should disconnect from the hearing at this time.